## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| ANTHONY HAMER, | : | CIVIL CASE NO. |
| OF THE ESTATE OF | : | 3:23-CV-00832 (JCH) |
| KENNETH S. MORRISON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JP MORGAN CHASE BANK, N.A. | : | MARCH 28, 2024 |
| LONG TERM DISABILITY BENEFIT PLAN, | : | |
| THE PRUDENTIAL INSURANCE | : | |
| COMPANY OF AMERICA, | : | |
| AND JP MORGAN CHASE BANK, N.A., | : | |
| Defendants. | : | |
| | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 60)

## I.    INTRODUCTION

Plaintiff Anthony Hamer ("Mr. Hamer"), individually, in his capacity as Co-Conservator of the estate of Kenneth Morrison ("Mr. Morrison") and successor trustee of Morrison's special needs trust, brings this action against defendants JP Morgan Chase Bank, N.A. Long Term Disability Benefit Plan (the "Plan"); The Prudential Insurance Company of America ("Prudential"); and JP Morgan Chase Bank, N.A. ("Chase"), seeking relief for underpayment of long-term disability benefits and breach of fiduciary duties.  See Complaint ("Compl.") (Doc. No. 1).

Before the court is the defendants' Motion to Dismiss, see Motion to Dismiss ("Mot.") (Doc. No. 60); see also Reply in Support of Motion to Dismiss ("Reply") (Doc. No. 85), which the plaintiff opposes, see Memorandum in Opposition ("Opp.") (Doc. No. 84).

For the reasons set forth below, the court denies the Motion to Dismiss.

1

## II.    BACKGROUND

### A.    Alleged Facts

This action was commenced by Mr. Hamer, the Co-Conservator of Morrison's

Estate and the Successor Trustee of the Kenneth S. Morrison Special Needs Trust (the

"Trust"). See Compl. ¶ 1. The court provides a summary of allegations relevant to this

Ruling with reference to Hamer's Complaint.

Mr. Morrison was a Vice President at Chase Manhattan Bank, now known as JP

Morgan Chase Bank, N.A. ("Chase") and the Head Options Trader for the North

America USD Interest Rate Derivative Trading Division ("USD IRD Trading"). Id. ¶ 9.

Mr. Hamer, as Managing Director of USD IRD Trading, was Mr. Morrison's direct

supervisor. Id.

As Head Options Trader, Mr. Morrison's annual compensation consisted of his

salary as well as a non-discretionary shift differential payment and a discretionary

incentive bonus. Id. ¶ 10. The shift differential was non-discretionary because Chase

required traders in USD IRD Trading to "be available around the clock, including

evening, night[,] and weekend hours." Id. ¶ 11. Mr. Morrison's compensation prior to

his accident was comprised of a $100,000 salary, $200,000 non-discretionary shift

differential payment, and $122,000 discretionary incentive bonus, id. ¶ 10, totaling

$422,000.

On September 9, 1995, after being struck by a taxi, Mr. Morrison suffered a

traumatic brain injury, triplegia, and aphasia; and consequently, became permanently

disabled. Id. ¶ 8. JP Morgan Chase Bank, N.A. Long Term Disability Benefit Plan (the

"Plan") determined Mr. Morrison was permanently disabled as defined by the terms of

the Plan.  Thereafter, Mr. Morrison received Plan benefits from 1996 until his death on March 21, 2022.  Id. ¶ 8, 12.

Under the Plan's Summary Plan Description ("SPD") in effect in 1996, Mr. Morrison was entitled to a long-term disability benefit equal to sixty percent of his "Monthly Base Salary".  Id. ¶ 12.  The SPD defined "Monthly Base Salary" as "annual base salary, expressed as a monthly amount, on the date the participant becomes disabled, including any shift differential."  Id.  The SPD does not define "shift differential".  Id.

The Human Resources Department ("HR") at Chase completed Mr. Morrison's initial Long-Term Disability ("LTD") Benefits application form on his behalf.  Id. ¶ 13. The application form requested Mr. Morrison's compensation but did not specify that the shift differential should be included.  Id.  Consequently, Chase reported Mr. Morrison's compensation as $100,000 exclusive of his annual shift differential payment.  Id.  Had HR included the shift differential, Mr. Morrison would have received $15,000 monthly, rather than the $5,000 he received on a monthly basis until his death.  Id.

In 2003, "shortly before Mr. Morrison became a ward of the State of Connecticut due to depleted finances", the $10,000 underpayment came to Chase's attention.  Id. ¶ 15.  Almost two decades later, in March 2020, Mr. Hamer became aware of the underpayment of benefits when he received a copy of Mr. Morrison's claim file from Prudential.  Id. ¶ 14.

On August 13, 2020, the Connecticut Court of Probate appointed Mr. Hamer as the Co-Conservator of Mr. Morrison's Estate and Successor Trustee of the Kenneth S.

Morrison Special Needs Trust.  Id. ¶ 7.  "On September 30, 2020, Mr. Hamer submitted

an administrative claim to Prudential for the underpayment . . . ."  Id. ¶ 16.

On December 14, 2020, Prudential denied the claim.  Id. ¶ 17.

> Prudential's denial rested upon (1) the incorrect salary information originally
> provided by Chase; and (2) an arbitrary and unreasonable interpretation of
> the Plan terms and the circumstances of Mr. Morrison's employment with
> Chase.  Prudential denied Mr. Hamer's claim without reviewing, considering
> or obtaining the Plan document as well as other information regarding Mr.
> Morrison's actual compensation and terms of employment with Chase.

Id. ¶ 17.

Four days later, on December 18, 2020, Mr. Hamer requested all documents

related to Mr. Morrison's benefits claim from Prudential, "including all governing Plan

documents and amendments thereto."  Id. ¶ 18.  Prudential never provided any copies

of Plan documents.  Id.  "The only Plan-related documents contained in the claim file . . .

were (1) a copy of the Cigna policy in effect in 1995 insuring disability benefits under the

Plan; [and] (2) a copy of the Plan's Summary Plan Description in effect in 1995."  Id.

When Mr. Hamer received documents from Prudential as a result of the administrative

claim process, Mr. Hamer became aware of Chase's awareness of the underpayment.

Id. ¶ 15.

On December 29, 2020, Mr. Hamer requested copies of all relevant Plan

documents from Chase, the Plan Administrator.  Id. ¶ 19.  Chase never provided such

documents.  Id.  On May 26, 2021, Mr. Hamer appealed Prudential's denial.  Id. ¶ 21.

On June 28, 2021, Prudential upheld its prior denial.  Id.

"[N]either Chase nor Prudential have ever provided Mr. Hamer with any

document properly granting discretion to Prudential to render claims determinations."

Id. ¶ 20. "Chase failed to maintain records of [(1)] the compensations system in effect at

4

the time of Mr. Morrison's accident", (2) the compensation paid to Mr. Morrison prior to the accident, and (3) the Plan documents in effect during Mr. Morrison's initial claim.  Id. ¶ 22.

      B.    <u>Procedural History</u>

On November 4, 2022, Mr. Hamer, in his capacity as Co-Conservator and Trustee of Mr. Morrison's Estate and Special Needs Trust, respectively, filed the Complaint against the defendants in the United States District Court for the Northern District of California.  <u>See</u> Compl. (Doc. No. 1).  On February 10, 2023, the defendants moved to dismiss and change venue.  <u>See</u> Motion to Dismiss and Change Venue (Doc. No. 19).  On June 16, 2023, the court granted the motion to transfer venue to the District of Connecticut and terminated the Motion to Dismiss without prejudice to its resolution in the transferee court.  <u>See</u> Orders (Doc. Nos. 43, 44).

On July 17, 2023, the defendants renewed their Motion to Dismiss, <u>see</u> Mot. (Doc. No. 60), and moved jointly with the plaintiff to stay the case, <u>see</u> Joint Motion to Stay (Doc. No. 63).  The court denied the Motion to Stay for failure to show good cause.  <u>See</u> Order (Doc. No. 66).  On August 7, 2023, Mr. Hamer, filed his Opposition to the Motion to Dismiss.  <u>See</u> Opp. (Doc. No. 84).  On August 21, 2023, the defendants filed their Reply to Hamer's Opposition.  <u>See</u> Reply (Doc. No. 85).

## III.    STANDARD OF REVIEW

      A.    <u>Rule 12(b)(1)</u>

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter

jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  Makarova, 201 F.3d at 113.

        B.    Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 2(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.   DISCUSSION

Mr. Hamer asserts various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against the defendants.  In Count One, Mr. Hamer seeks recovery of unpaid benefits under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1332(a)(1)(B), against Prudential and the Plan for failing to pay Mr. Morrison "the full and proper amount of his long-term disability benefits in accordance

with the terms of the Plan". <u>See</u> Compl. ¶¶ 26-28.  In Counts Two through Five, Mr. Hamer seeks equitable relief under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), for breaches of fiduciary duties.  <u>See</u> Compl. ¶¶ 29-54.  Lastly, in Count Six, Mr. Hamer seeks statutory penalties under section 502(c) of ERISA against Chase for failing to produce documents pursuant to sections 102, 104(b)(4), and 502(c) of ERISA and section 2560.503-1 of title 29 of the Code of Federal Regulations.  <u>See</u> <u>id.</u> ¶¶ 55-58.

The defendants move to dismiss on four grounds.  <u>See</u> Mot.  The defendants argue that Mr. Hamer does not have standing to seek injunctive relief under section 503(a)(2) of ERISA because Mr. Morrison is deceased and there will be no further claim administration, thus, there is no imminent threat of harm.  <u>See</u> <u>id.</u> at 6-8.  They further argue that Mr. Hamer's claims under section 502(a)(3) of ERISA are barred by ERISA's statute of repose.  <u>See</u> <u>id.</u> at 8-12.  The defendants move to dismiss Mr. Hamer's section 502(c)(1) claim, arguing it is barred by the Connecticut statute of limitations for civil forfeiture.  <u>See</u> <u>id.</u> at 12.  Lastly, the defendants also seek to dismiss the section 502(a)(3) claims on the ground that the relief Mr. Hamer seeks is redressed by other statutory provisions of ERISA.  <u>See</u> <u>id.</u> at 12-21.

The court addresses the defendants' standing argument first.  <u>See</u> <u>Am. Italian Women for Greater New Haven v. City of New Haven</u>, 3:21-cv-01401 (JCH), 2023 WL 122043, at *3 (D. Conn. Jan. 5, 2023) (citing <u>Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990)) ("[W]here a party argues that the court should dismiss for lack of subject matter jurisdiction in addition to other grounds, the court should consider the Rule 12(b)(1) challenge first, because lack of subject matter may render the other challenges moot.").

7

A.    Standing

To have standing to sue, "[a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (first citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); and then citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 180-81 (2000)). "[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating' each element." Id. (citing Warth v. Seldin, 422 U.S. 490, 518 (1975)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." Soule v. Connecticut Assoc. of Schs., Inc., 90 F.4th 34, 45 (2d Cir. 2023) (quoting Lujan, 504 U.S. at 561).

The instant Motion to Dismiss concerns the first element, injury in fact. See Mot. at 6-8. The defendants argue that Mr. Hamer does not have an injury sufficient to confer standing to assert a claim for injunctive relief under section 502(a)(3) of ERISA. See id. "To constitute an injury in fact sufficient to sustain Article III standing, an alleged harm must be (1) concrete, (2) particularized, and (3) actual or imminent." Soule, 90 F.4th at 45 (citing TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)).

The defendants argue, in particular, that, Mr. Hamer cannot satisfy the third requirement of an actual or imminent injury. See Mot. at 6-8. They contend that there will be no further claim administration as Mr. Morrison is deceased; thus, the only alleged injury is the underpayment of benefits, which, as a past harm, cannot be relied on for standing to pursue injunctive relief. See id. In his Opposition, Mr. Hamer counters that he need not allege an imminent threat of harm if he alleges an actual

injury.  See Opp. at 19.  He further argues that equitable and injunctive relief is available to remedy past harms under the plain language of ERISA.  See id. at 20.

The court first notes that Mr. Hamer's argument—that the language of ERISA permits injunctive relief to remedy a past harm—relates to the merits and not standing. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 92 (1998) (noting that the question of whether "the scope of [a] right of action includes past violations . . . goes to the merits and not to statutory standing" (citing Nw. Airlines, Inc. v. County of Kent, 510 U.S. 355, 365 (1994))).  "There is no ERISA exception to Article III."  See Thole v. U.S. Bank N.A., 590 U.S. —, 140 S. Ct. 1615, 1622 (2020); see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C., 433 F.3d 181, 201 (2d Cir. 2005) (emphasizing that statutory standing under ERISA is insufficient to confer Article III standing).  Article III requires that the plaintiff demonstrate standing for each type of relief sought.  See Soule, 90 F.4th at 45 (2d Cir. 2023) (citing TransUnion, 594 U.S. at 431); Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

The defendants are correct that, as a past harm, the alleged underpayment of benefits is insufficient by itself to confer on Mr. Hamer constitutional standing to pursue injunctive relief.  See Lyons, 461 U.S. at 105 ("past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy" for injunctive relief).  However, their assertion that Mr. Hamer must show imminent future injury, see Mot. at 7-8, is incorrect.  Imminent threat of future injury is but one way to confer standing to pursue injunctive relief.  See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).  A "continuing violation" or a past injury

accompanied by any "continuing, present adverse effects" confers constitutional standing to seek injunctive relief.  See Soule, 90 F.4th at 49 ("The loss of publicly recognized titles and lower placements in specific races is itself an existing and ongoing effect of Plaintiffs' alleged injury—an effect that would be redressed by the public record alterations reflecting those achievements."); cf. Steel Co., 523 U.S. at 109 (holding that the plaintiffs did not have standing because the violations were not ongoing).

In the instant case, Mr. Hamer asks that the court enjoin Chase and Prudential from "further failure to administer the plan in ways that violate ERISA and the Claims Regulation and that violate the terms and requirements of the Plan."[1]  See Compl. at 16 ¶ B.  Mr. Hamer asserts that "Mr. Morrison suffered the continued depletion of his own assets and the resulting decline in his care and health as the result of Chase's fiduciary breaches."  See Opp. at 14 (citing Compl. ¶ 15).[2]  Mr. Hamer further contends "he incurred substantial attorney fees and costs on behalf of the Trust, in order to enforce Mr. Morrison's rights under ERISA."  See id. (citing Compl. ¶ 35).  Whether such injuries are considered separate from or related to the alleged injury of underpaid benefits, they are ongoing.[3]  Depletion of Mr. Morrison's assets plausibly has a continuing effect on

---

[1] Because the requested injunction is so broad, the court notes that, if Mr. Hamer succeeds on his claims, injunctive relief would necessarily be limited to the extent to which it redresses particularized harms.  See Soule, 90 F.4th at 50.

[2] Although Mr. Hamer discusses injuries in the section of his brief pertaining to the issue of whether he can assert claims under section 502(a)(3) as well as 502(a)(1)(B), see Opp. at 12-14, it is relevant to the discussion on standing.

[3] Although Mr. Morrison is a former beneficiary, he is considered an ERISA "participant" because, although deceased, he has a "colorable claim to vested benefits".  See Bulovic v. Both, 14 F. Supp. 3d 365, 380 (S.D.N.Y. 2014) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989)); see also Clatagirone v. New York Cmty. Bancorp, 414 F. Supp. 2d 188, 192 (E.D.N.Y. 2006), aff'd sub nom. Caltagirone v. N.Y. Cmty. Bancorp, Inc., 257 F. App'x 470 (2d Cir. 2007).  Further, "[Varity Corp v. ]Howe indicated that former participants or beneficiaries could obtain equitable relief under section 502(a)(3)".  Bona v. Barasch, No. 01-cv-2289 (MBM), 2003 WL 1395932, at *13 (S.D.N.Y. Mar. 20, 2003).

the abilities of the Estate and Trust to carry out their functions. Although costs of litigation are not injuries sufficient to confer standing, costs unrelated to litigation are. See Steel Co., 523 U.S. at 108. As such, Mr. Hamer has met the constitutional minimum of alleging an actual injury sufficient to confer standing to pursue injunctive relief under section 502(a)(3) of ERISA.

Accordingly, the court denies the defendants' Motion to Dismiss as to standing.

B.    Timeliness of Claims

1.    Fiduciary Breach Claims

Section 413 of ERISA provides:

No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

See 29 U.S.C. § 1113. The defendants argue that Hamer's claims under section 502(a)(3) of ERISA are time barred under the statute of repose in section 413(1). See Mot. at 8-12. In Opposition, Mr. Hamer argues that the defendants have failed to show that the concealment exception does not apply or that his claims are untimely under subsection (2) of section 413. See Opp. at 14-19.

The court will first determine whether the concealment exception applies. "[A]pplication of the concealment exception requires that 'in addition to alleging a breach

of fiduciary duty (be it fraud or any other act or omission), the plaintiff . . . also allege that the defendant committed either: (1) a self-concealing act—an act committed during the course of the breach that has the effect of concealing the breach from the plaintiff; or (2) active concealment—an act distinct from and subsequent to the breach intended to conceal it.'" Osberg v. Foot Locker, Inc., 862 F.3d 198, 210–11 (2d Cir. 2017) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 189 (2d Cir. 2001)).  However, the plaintiff need not prove the elements of common law fraud.  See id. 210.

Here, Mr. Hamer alleges that "[t]he error in the payment of Mr. Morrison's monthly LTD benefits came to Chase's attention in 2003" and that "[u]pon information and belief, Chase deliberately withheld its awareness of the miscalculation and underpayment".  See Compl. ¶ 15.  These allegations are not "self-concealing act[s]" or "active concealments".  See Osberg, 862 F.3d at 211 (find that the defendant's "misstatements to participants that suggested that the value of their benefits was fully reflected in their account balances and would increase in value with continued employment" were "affirmative representations of a material fact" constituting "self-concealing acts").  Thus, the concealment section does not apply.

Section 413 expressly provides that, unless the concealment section applies, an action based on fiduciary breach cannot be commenced after the earlier of the two subsections.  See 29 U.S.C. § 1113.  Therefore, even assuming, arguendo, Mr. Hamer is correct that the defendants have not shown when he obtained his knowledge of Chase's miscalculation, underpayment, or failure to investigate, his claims would, nonetheless, be barred if the period in subsection (1) has completely run.

The plaintiff is correct that "a statute of limitations argument is an affirmative defense for which [the defendant] bears the burden of proof."  See Browe v. CTC Corp., 15 F.4th 175, 190 (2d Cir. 2021) (quoting United States v. Livecchi, 711 F.3d 345, 352 (2d Cir. 2013)).  However, section 413 is comprised of both a statute of limitations and a statute of repose.  See Intel Corp. Inv. Pol'y Comm. v. Sulyma, 589 U.S. —, 140 S. Ct. 768, 774 (2020).  The first subsection of section 413 is referred to as a statute of repose whereas the second subsection constitutes a statute of limitations.  Id.  In contrast to a statute of limitations, "[a] statute of repose . . . 'is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit.'"  Browe, 15 F.4th at 190 (quoting P. Stolz Fam. P'ship v. Daum, 355 F.3d 92, 102 (2d Cir. 2004)).  Therefore, the defendants bear the burden of proof as to arguments pertaining to section 413(2) but not section 413(1).  Because, here, the defendants move to dismiss Mr. Hamer's breach of fiduciary duty claims under section 413(1), Mr. Hamer bears the burden of proof.

Subsection (1) of section 413 "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  Sulyma, 140 S. Ct. at 774 (quoting California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc., 582 U.S. 497, 505 (2017)).

> [W]hile statutes of limitations are often subject to tolling principles, a statute of repose extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts. This conceptual distinction carries significant practical consequences.  For instance, a statute of repose may bar a claim even before the plaintiff suffers injury, leaving her without any remedy.

See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 106 (2d Cir. 2013) (internal citations and quotation marks omitted).

Here, Mr. Hamer seeks relief under section 502(a)(3) of ERISA for breaches of fiduciary duties in Counts Two, Three, Four, and Five of his Complaint.  See Compl. ¶¶ 29-54.  Mr. Hamer does not segregate the factual allegations specifically pertaining to each Count; instead, he incorporates all allegations by reference.  See id. ¶¶ 29, 37, 43, 48.  Because the statute of repose provides that the plaintiff cannot bring an action for breach of fiduciary duties "(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation", see 29 U.S.C. § 1113, a review of the claims is warranted in determining which of the defendants' alleged actions are relevant to each Count.

In Count Two, Mr. Hamer alleges that Chase and Prudential breached their fiduciary duties prescribed in subsections (A), (B), and (D) of section 401(1) of ERISA, which, "require[ ] fiduciaries to discharge their duties: (1) solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan"; (2) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims"; and (3) "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA."  See Compl. ¶¶ 30-32.  Mr. Hamer further alleges in Count Two that the defendants breached section 503 of ERISA, which requires an employee benefit plan to establish and maintain a reasonable claims procedure".  See id. ¶ 33.  The factual allegations pertaining to Count

14

Two include: (1) Mr. Hamer's "submi[ssion] of an administrative claim to Prudential for the underpayment of benefits" on September 30, 2020, see id. ¶ 16; and (2) subsequent communications between Mr. Hamer and the defendants that occurred through June 2021, see id. ¶¶ 17-21.  These allegations are purported to have taken place well within the six-year period of repose.

On the other hand, several of the factual allegations that could reasonably pertain to the statutory breaches in Count Two occurred more than six years prior to the filing of the Complaint on November 4, 2022.  For example, Mr. Hamer alleges that Chase became aware of the purported underpayment of benefits to Mr. Morrison in 2003.  See id. ¶ 15.  However, the statute of repose only bars claims under section 502(a)(3) of ERISA "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation."  See 29 U.S.C. § 1113(1) (emphasis added).  According to the Complaint, Mr. Morrison received benefits from 1996 until his death on March 21, 2022.  See Compl. ¶¶ 8, 12.  As such, the last payment defendants made to Mr. Morrison occurred in February or March 2022.  Therefore, the claims in Count Two specifically concerning the underpayment of benefits are also not barred by the statute of repose.

Counts Three through Five raise claims for breach of fiduciary duties only against Chase in its capacity as Plan Administrator.  In Count Three, like in Count Two, Mr. Hamer seeks relief for violations of duties prescribed in subsections (A) and (B) of section 401(1) for Chase's alleged failure to monitor Prudential's fiduciary obligations. See id. ¶¶ 38-41.  Count Four seeks relief for Chase's alleged violation of the fiduciary

duty outlined in section 405(a), which "provides that a fiduciary is responsible for its co-fiduciaries' breaches if it has knowledge of another fiduciary's breach, unless it made reasonable efforts under the circumstances to remedy the breach."  See id. ¶ 44.  The section 502(a)(3) claims in Counts Three and Four concern Chase's oversight of Prudential.  The factual allegations pertaining to Prudential all concern events or conduct in or after March 2020, see id. ¶¶ 14-22, well within the six-year period.

In Count Five, Mr. Hamer alleges that Chase, as Plan Administrator, breached subsections (A), (B), and (D) of section 404(a)(1).  See id. ¶¶ 50-52.  It is not clear if and to what extent these claims differ from the claims against Chase in Count Two. Nevertheless, as discussed above, see, supra, at 14-15, because all alleged "last actions" took place in 2020 or later, the claims concerning violations of section 404(a)(1) are not barred by the statute of repose.

Count Five also alleges that Chase violated section 209(a)(1) of ERISA, which "requires that an employer which sponsors an employee benefit plan maintain records with respect to each of its employees sufficient to determine the benefits due or which may become due to such employees."  See id. ¶ 49.  The factual allegations plausibly related to this claim are: (1) "Chase failed to maintain records of the compensation system in effect at the time of Mr. Morrison's accident, and failed to maintain records of the actual compensation paid to Mr. Morrison prior to his accident, all of which bear on the determination of the benefits due Mr. Morrison"; and (2) "Chase also failed to maintain copies of the Plan documents in effect at the time of Mr. Morrison's initial claim for benefits, which bear directly upon the determination of the benefits due Mr. Morrison."  See Compl. ¶ 22.  It is not entirely clear when the "last action" that

16

constitutes part of the alleged breach occurred.  However, the statute of repose

provides that "in the case of omission", the plaintiff may commence an action within six

years after "the latest date on which the fiduciary could have cured the breach of

violation".  See 29 U.S.C. § 1113(1)(B).   Mr. Hamer alleges that Chase never

responded to his request, dated December 29, 2020, for relevant Plan documents.  See

Compl. ¶¶ 18, 19.  Because Chase could have responded, showing it had maintained

the requisite documents, the latest date on which Chase could have "cured" the breach

would have been sometime in early 2021, which would have been well within the six

year-period.

Accordingly, the court denies the defendants' Motion to Dismiss the plaintiff's

section 502(a)(3) claims on the ground that they are untimely under ERISA's statute of

repose.

### 2.    Section 502(c)(1) Claim for Withholding Documents

"Because ERISA 'does not prescribe a limitations period for [Section 502(c)(1)]

actions . . . the applicable limitations period is that specified in the most nearly

analogous state limitations statute.'"  Brown v. Rawlings Fin. Servs., LLC, 868 F.3d 126,

128 (2d Cir. 2017) (quoting Burke v. PriceWaterhouseCoopers LLP Long Term

Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009)).  In their Motion to Dismiss, the

defendants argue that the Connecticut statute of limitations for civil forfeiture should

apply, under which the plaintiff's claim under section 502(c)(1) of ERISA is time-barred.

See Mot. at 12.  Mr. Hamer concedes that, if his 502(c)(1) claim is subject to the

Connecticut limitations period for civil forfeiture claims, it is barred, but notes that he

initially filed this action in the Northern District of California, where the claim was subject

to a three-year statute of limitations period.  See Opp. at 20.

As Mr. Hamer emphasizes, the instant action was transferred from the Northern District of California.  See Order on Motion to Transfer Venue (Doc. No. 44).  In particular, the case was transferred pursuant to section 1404(a) of title 28 of the U.S. Code.  See id. at 13.  When a case is transferred under section 1404(a), the transferee court must apply the law that the transferor court would have applied.  Ferens v. John Deere Co., 494 U.S. 516 (1990); Van Dusen v. Barrack, 376 U.S. 612, 642 (1964) (applying the law of the transferor court to a federal claim that applies the law of the forum state); see also Gerena v. Korb, 617 F.3d 197, 204-05 (2d Cir. 2010).  The application of the rule of Van Dusen is straightforward when a court sits in diversity and state claims are at issue.  See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993).  When federal claims are at issue, Van Dusen does not require that the transferee court apply the law of the Circuit of the transferor court because, "[a]lthough federal courts sometimes arrive at different constructions of federal law, federal law (unlike state law) is supposed to be unitary."  Id.

However, federal claims may implicate state law and thus, invoke the principles of Erie.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 159 n.13 (1983) ("We do not suggest that the Erie doctrine is wholly irrelevant to all federal causes of action."). For example, here, the limitations period applicable to claims under section 502(c)(1) of ERISA is the most analogous state law claim.  See Brown, 868 F.3d at 128.  However, the application of a state limitations period to a federal claim is not mandatory.  See DelCostello, 462 U.S. at 159 n.13.  Where Congress is silent on an issue pertaining to a federal claim, such as when it does not prescribe a limitations period, "federal courts may apply limitations periods provided by analogous state laws . . . , may select a

federal limitations period . . . , or may choose not to apply a limitations period at all". Menowitz, 991 F.2d at 41 (citation omitted).  The choice a given Court of Appeals makes becomes a matter of federal law.  Id.  As such, where Circuits make different choices, the transferee court must follow the choice its Circuit has made.  See id. ("Given that the choice of the statute of limitations period applicable to [the] claims [at issue] is a matter of federal law, the statute of limitations doctrine of the transferee Second Circuit applies to the [ ] plaintiffs' claims.").  That is, if the transferor Circuit applies the analogous state statute of limitations period to a federal claim but the transferee Circuit has selected and applied a federal limitations period, the rule of Van Dusen does not compel the transferee court to apply the state limitations period that the transferor court would have applied.  See id. at 41.  However, if both the transferor and transferee Circuits apply the limitations period provided by the most analogous state law to federal claims, Van Dusen applies, and the transferee court must apply the state limitations period that the transferor court would have applied.  See H.L. Green Co. v. MacMahon, 312 F.2d 650, 652-53 (2d Cir. 1962).[4]

---

[4] Menowitz abrogated, but did not overrule, H.L. Green Co.  See Menowitz, 991 F.2d at 41 (noting that, inter alia, H.L. Green Co. v. MacMahon, 312 F.2d 650, 653 (2d Cir. 1962), is "of limited precedential value because [it] pre-date[s] DelCostello's holding that borrowed state limitations periods are incorporated into federal law").  In H.L. Green Co., which was cited to favorably in Van Dusen, the Second Circuit held that the state statute of limitations applicable in the transferor court should govern when the case is transferred to another district, no matter if the cause was brought under federal question or diversity jurisdiction.  See 312 F.2d at 653.  In Menon, at issue was whether the law of the Second Circuit or the Eleventh Circuit concerning the limitations period applicable to a section 10(b) action transferred from the Southern District of Florida to the Southern District of New York under section 1407 of title 28 of the U.S. Code.  See 991 F.2d at 39-40.  In enacting section 10(b), Congress did not create a federal statute of limitations.  In Ceres Partners v. GEL Assoc., 918 F.2d 349 (2d Cir. 1990), the Second Circuit chose to adopt a uniform federal limitations period for section 10(b) claims.  See Menowitz, 991 F.2d at 39.  The Eleventh Circuit applied a state statute of limitations to section 10(b) claims.  See id. at 39-40.  In the absence of a federal statute of limitations, federal courts may choose to apply the limitations period of an analogous state law, select a federal limitations period, or choose not to apply a limitations period at all.  See id. at 41 (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 159 n.13 (1983)).  That choice is a matter of federal law.  See id.

Here, because both the Ninth Circuit and the Second Circuit apply the limitations period of the most analogous state claim, see Brown, 868 F.3d at 128; Stone v. Travelers Corp., 58 F.3d 434, 438 (9th Cir. 1995), the rule of Van Dusen and Ferens is invoked.  See H.L. Green Co., 312 F.2d at 652-53.  Critically, however, "when a transferor court has not ruled on the propriety of venue or jurisdiction, the transferee court must determine whether venue and jurisdiction would have been proper in the transferor court in order to decide which forum state's law will apply under Erie."  Davis v. Costa-Gavras, 580 F. Supp. 1082, 1086 (S.D.N.Y. 1984) (citations omitted).  In other words, if the transferor court transferred the action under section 1404(a) for the convenience of the parties but never had proper jurisdiction or venue, then the transferee court does not apply the law that the transferor would have applied.  See Gerena, 617 F.3d at 204.

In the instant case, the Order on the defendants' Motion to Transfer Venue to the District of Connecticut only discussed convenience factors under section 1404.  See Order on Motion to Transfer Venue.  Therefore, the court must first determine whether personal jurisdiction and venue were proper in the transferor court to apply the rule of Van Dusen and Ferens.

ERISA's venue statute is broad, allowing an action to "be brought in the district where the plan is administered, where the breach took place, or where a defendant

---

Because the Second Circuit had chosen a uniform federal limitations period of one year to apply to section 10(b) claims, that choice, rather than the Eleventh Circuit's choice to apply the limitations period of the most analogous state law, governed.  See id.  Thus, to the extent that H.L. Green Co.'s dicta stating that "whatever rights the parties have acquired under state law should be unaffected" could have been interpreted as requiring the district court in Menowitz to apply the analogous Florida statute of limitations, Menowitz held otherwise.  Where the transferor and transferee Circuits both apply the limitations period of the most analogous state law to a federal claim that has no express statute of limitations, H.L. Green Co. governs to require that the transferee court apply the state law that the transferor court would have applied.

resides or may be found, and process may be served in any other district where a defendant resides or may be found." See 29 U.S.C. § 1132(e)(2); see also Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r, No. 6-cv-2065 (CFD), 2008 WL 2228841, at *2 (D. Conn. May 7, 2008).  "[C]ourts within this Circuit have often looked to the position of the plaintiff during the administration of an ERISA plan in deciding whether the defendant may be 'found' within the district for venue purposes." Garg v. Winterthur, 525 F. Supp. 2d 315, 323 (E.D.N.Y. 2007); see also Barnum v. Mosca, No. 1:08-cv-567 (LEK/RFT), 2009 WL 982579, at *2-3 (N.D.N.Y. Apr. 13, 2009) (surveying cases and "agree[ing] with the majority of courts that have addressed this issue—that for purposes of the ERISA venue statute, the place of breach occurs where the plaintiff is to receive his benefits").  As the court notes in its Order granting transfer, "as trustee of the trust for Mr. Morrison's plan benefits, Mr. Hamer is still the real party in interest", see Order on Motion to Transfer at 10, and "Mr. Hamer has lived in San Francisco 'at all times pertinent'," see id. at 5 (citing Compl. ¶ 3).  The court further provides:

> Mr. Hamer and another trustee have managed and disbursed Mr. Morrison's plan benefits from [California], via the trust, since 2008.  The trust's assets (the plan benefits) are held here, at least until they are disbursed.  And Mr. Hamer pursued the administrative claim that preceded this lawsuit.  In substance, though, this district has functioned as a conduit for the plan benefits, whose object was in Connecticut.

See id. at 11.  Upon examination of these alleged facts, the court finds that venue and personal jurisdiction were proper in the Northern District of California, the transferor court.  As such, the rule of Van Dusen and Ferens applies and the court applies apply the law that the Northern District of California would have applied to the section 502(c) claim.

Federal courts in California apply the three-year limitations period in section 338(a) of the California Civil Procedure Code to determine whether claims under section 502(c)(1) of ERISA are timely. See Anderson v. Intel Corp. Inv. Pol'y Comm., 602 F. Supp. 3d 1238, 1241 (N.D. Cal. 2022) (citing Stone, 58 F.3d at 438-39). Because the Complaint was filed on November 4, 2022, see Compl. (Doc. No. 1), and Mr. Hamer alleges that Chase failed to respond to Mr. Hamer's written request, dated December 29, 2020, for copies of the Plan documents, see id. ¶ 57, Mr. Hamer's section 502(c)(1) claim is not time barred.

Accordingly, the defendants' Motion to Dismiss the plaintiff's claim under section 502(c) of ERISA is denied.

C.    Availability of Relief

The defendants move to dismiss Mr. Hamer's section 502(a)(3) claims because the only alleged injury, the underpayment of benefits, can be remedied by section 502(a)(1)(B) of ERISA. See Mot. at 12-20. They further argue that the alleged violations of ERISA's procedures requiring fiduciaries to maintain records and a reasonable claims procedure are not actionable here because they did not result in any substantive harm. See id. at 20-21.

In his Opposition, Mr. Hamer counters that his claims under section 502(a)(3) offer alternative theories of liability and are not duplicative of his claim under section 502(a)(1)(B). See Opp. at 8-14. Mr. Hamer argues that it would be premature to dismiss his section 502(a)(3) claims at this stage. See id. at 8-10 (citing Rapp v. Henkel of Am., Inc., No. 3:18-cv-1656 (JCH), 2019 WL 4509095, at *6 (D. Conn. Sept. 18, 2019)).

22

A court may dismiss claims under section 502(a)(3) of ERISA where it is clear that all harm alleged by the plaintiff can be entirely redressed by monetary damages under section 502(a)(1)(B).  See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005).  Conversely, where it is not clear that the money damages under section 502(a)(1)(B) provide the plaintiff with a sufficient remedy, the court cannot prematurely dismiss 502(a)(3) claims as duplicative of 502(a)(1)(B) claims.  See New York State Psychiatric Assoc., Inc. v. UnitedHealth Grp., 798 F.3d 125, 134 (2d Cir. 2015) (hereinafter "NYSPA") (noting that the plaintiff sought to enjoin the defendant from committing future fiduciary breaches, which is an appropriate remedy under section 502(a)(3) but not section 502(a)(1)(B)); see also Rapp, 2019 WL 4509095, at *6.

As the defendants contend, if successful, the plaintiff's claim under section 502(a)(1)(B) would redress the alleged underpayment of benefits resulting from misinterpretation of plan documents.  See Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (holding that section 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims.").  However, the defendants presume that the only alleged harm is the underpayment of benefits.  In his Opposition, Mr. Hamer emphasizes other harms purportedly caused by the defendants' conduct: "Mr. Morrison suffered the loss of his remaining assets and endured a precipitous decline in his health and well-being, while Mr. Hamer and the trust incurred significant attorney's fees and costs in seeking to enforce Mr. Morrison's rights under the Plan and ERISA."  See Opp. at 2; see also Opp. at 14.  Damages pursuant to section 502(a)(1)(B) for unpaid benefits may not provide Mr. Hamer with a sufficient remedy.  See Varity, 516 U.S. at 511 (rejecting defendant's

argument that, in light of <u>Massachusetts Mut. Life Ins. Co v. Russell</u>, 473 U.S. 134 (1985), individual equitable relief was not an appropriate remedy for breach of fiduciary duties by noting that "<u>Russell</u> involved a complicating factor . . . in that another remedial provision (subsection (1)) already provided specific relief for the sort of injury the plaintiff had suffered (wrongful denial of benefits), but said 'nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim.'" (quoting <u>Russell</u>, 473 U.S. at 144)); <u>Devlin v. Empire Blue Cross & Blue Shield</u>, 274 F.3d 76, 89 (2d Cir. 2001) (noting that if the plaintiffs' claim under section 502(a)(1)(B) fails, "plaintiffs' breach of fiduciary duty claim is their only remaining remedy").

Furthermore, as discussed above, <u>see</u>, <u>supra</u>, at 14-17, several of Mr. Hamer's breach of fiduciary duty claims do not pertain to plan interpretation, but instead, relate to the defendants' purported failure to maintain relevant Plan documents as well as Prudential's claims procedure. <u>See</u> Compl. ¶¶ 29-54. Section 502(a)(1)(B) does not provide a remedy for breaches of fiduciary duties unrelated to the interpretation of plan terms. <u>See</u> <u>Devlin</u>, 274 F.3d at 89 (noting that "<u>Varity Corp.</u> did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty"). Thus, on the face of the Complaint, Mr. Hamer's claims under section 502(a)(3) do not appear to be wholly duplicative of his claim under section 502(a)(1)(B).

With respect to the defendants' argument that no harm resulted from the alleged procedural violations, the court is not convinced. While the alleged underpaid benefits were initially caused by Chase's alleged miscalculation in 1996, the alleged failure to

24

maintain records and a reasonable claims procedure prevented Mr. Morrison from receiving his benefits in the correct amount for at least the time period from 2020 to his death in 2022.  Further, the defendants fail to consider Mr. Hamer's assertions that the underpayments resulted in the depletion of Mr. Morrison's resources and the manner in which the defendants handled Mr. Hamer's benefits claim caused him to incur costs. The defendants contend that attorney's fees incurred during the administrative claims process are not appropriate relief under section 502(a)(3).  See Reply at 2-3.  However, Mr. Hamer does not seek to recover pre-litigation attorney's fees and costs under section 502(a)(3).  Rather, Mr. Hamer seeks a declaration, injunctive relief, and surcharge as "appropriate equitable relief pursuant to [ ] [section] 502(a)(3)".  See Compl. at 16 ¶ B.  Further, as the court addressed in Section IV.A., see, supra, at 11, costs suffered by the plaintiff—aside from those pertaining to litigation, i.e., attorney's fees—confer standing to pursue injunctive relief.  See Steel Co., 523 U.S. at 108.

At this stage, the court cannot conclude that the plaintiff's section 502(a)(3) claims are duplicative of his section 502(a)(1)(B) claim.  Therefore, the defendants' Motion to Dismiss Mr. Hamer's claims under section 502(a)(3) is denied.

## V.    Conclusion

For the reasons stated above, the court denies the defendants' Motion to Dismiss (Doc. No. 60).

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of March 2024.


   /s/ Janet C. Hall
Janet C. Hall
United States District Judge

25